UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR WAYNE COOPER,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA,<br><br>    Defendant.<br>_____/ | No. C-02-3712 JSW (JCS)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT**<br>**[Docket No. 135]** |

## I.  INTRODUCTION

On December 17, 2003, this action was dismissed with prejudice based on the stipulation of the parties, pursuant to a Settlement Agreement. Under the Settlement Agreement, California State Prison - Solano ("Solano") agreed to establish a Kosher Diet Plan for "all kosher-observant inmates." The parties further stipulated that the District Court for the Northern District of California would retain jurisdiction over enforcement of the Settlement Agreement, with Magistrate Judge Joseph C. Spero presiding.

An individual inmate, Earnest C. Woods II ("Woods"), an inmate of Solano, filed a motion to enforce the Settlement Agreement ("Motion"). For the reasons stated below, it is recommended that the Motion be DENIED.

## II.  BACKGROUND

The underlying action was initiated by Plaintiff Victor Wayne Cooper, a kosher-observant Jewish inmate, on August 16, 2002. Cooper alleged that the State of California and the Department of Corrections had violated his rights under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000, by

failing to provide him with kosher meals while incarcerated. The parties entered into a Settlement Agreement in November 2003.

Under the Settlement Agreement, a kosher diet program was established at Solano, where Cooper was incarcerated at the time of the settlement, for "all kosher-observant inmates" holding a "Special Religious Diet Card issued by the Department of Corrections." Settlement Agreement at 4, Section II (2)(c). Guidelines entitled "CDC Kosher Meal Provision Plan" ("CDC Guidelines") were incorporated into the Settlement Agreement. Settlement Agreement at 4, Section II (2)(d) & Exhibit A. The Settlement Agreement allowed Defendants to make "reasonable modifications" to these guidelines "so long as Defendants fulfill their duty to provide wholesome kosher meals . . . ." Settlement Agreement at 9, Section II (19).

The Settlement Agreement calls for the program to be "overseen by a Jewish chaplain under the supervision of an orthodox or conservative rabbi." Settlement Agreement at 4, Section II (2)(b). In particular, Section II(2)(b), entitled "Oversight," provides:

> The Kosher Diet Program will be overseen by a Jewish chaplain under the supervision of an orthodox or conservative rabbi. The rabbi shall be given access to inspect the Kosher Diet Program (including all of its facilities) upon request. The rabbi shall make the ultimate determination on violations of the Kosher Diet Program. An inmate against whom a violation of the Kosher Diet Program is pending shall be entitled to consult with the rabbi before a final determination regarding the alleged violation.

*Id.* at 4. The Settlement Agreement purports to create broad enforcement rights, allowing any Solano inmate who is a participant in the Kosher Diet Program to bring a motion to enforce in this Court "after determination of the Informal and First Level Formal Reviews or upon lapse of 45 days from the Solano inmate's submission of his initial grievance." Settlement Agreement at 5, Section II (2)(e).

Woods is a participant in the Kosher Diet Program. Motion at 1. He alleges in his Motion that Defendants breached the Settlement Agreement by serving him cold meals. He further asserts that Kosher food is being kept with general population food in the same meal cart in violation of the Settlement Agreement. On August 8, 2006, Plaintiff filed a grievance regarding the former complaint, which was denied initially on May 9, 2006, and subsequently in a Director's Level

Appeal Decision dated August 8, 2006. The May 9, 2006 decision stated that under the CDC Guidelines, "[e]arly feeding for the Program participants is encouraged." Woods, however, asserts that no such guideline is contained in the Settlement Agreement. There is no indication that Plaintiff filed a grievance regarding the use of the same carts for Kosher and non-Kosher food.

**III.   ANALYSIS**

For the purposes of construction and enforcement, settlement agreements are "governed by principles of local law which apply to interpretation of contracts generally." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (quotations omitted). Under California law – the applicable local law here – courts seek to establish the parties' intent from the contract's language: "[t]he paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as it is ascertainable and lawful. The intention of the parties must, in the first instance, be derived from the language of the entire contract." *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal. App. 4th 24, 45 (2004) (quotations omitted).

As a participant in the Kosher Diet Program, Woods is entitled to bring a motion to enforce the Settlement Agreement under Section II(2)(e) regarding claims that have gone through Defendants' grievance process. Woods filed a grievance regarding his complaint that kosher meals were being served cold and received a final decision on that grievance. Therefore, he has standing to bring a motion to enforce on the basis of that complaint. On the other hand, there is no indication that Woods submitted a grievance regarding the storage of kosher and non-kosher meals together in the same meal carts. Accordingly, Woods does not have standing with respect to that claim.

While Woods has standing to bring a motion to enforce based on his complaint that his meals were served cold, his claim that the Settlement Agreement has therefore been violated is not persuasive. Woods has not alleged or presented evidence that the rabbi overseeing the Kosher Diet Program has found the delivery or temperature of kosher meals to be inadequate. Under the Settlement Agreement, the rabbi makes "the ultimate determination on violations of the Kosher Diet Program." *Id.* In light of this provision, the Court concludes that it was not the intention of the parties that the Court would become directly involved in regulating the content – including meal

3

temperature – of the Kosher Food Program.  Rather, it is clear that this authority was delegated to the rabbi.

Finally, to the extent that Woods asserts that Defendants have misrepresented the content of the CDC Guidelines, the Court notes that Defendants appear to have cited to an updated version of the CDC Guidelines in stating that "[e]arly feeding for the Program participants is encouraged."  In the original version of the CDC Guidelines, the only guidelines addressing delivery of the meals provided that: 1) "Inmates in general population may be served prior to or after the regular mealtime;" and 2) "Meals will be delivered to inmates in segregation prior to or after normal segregation population meals."  Settlement Agreement, Ex. A.  Defendants' amendment of the CDC Guidelines is reasonable and, indeed, appears to give participants greater rights than the original guidelines.  Therefore, reliance on the updated guidelines does not constitute a violation of the Settlement Agreement.

**IV.    CONCLUSION**

For the reasons stated above, it is recommended that the Motion be DENIED.

Dated: September 27, 2006

JOSEPH C. SPERO
United States Magistrate Judge

4